UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

TITUS B. JOHNSON                                                                          Plaintiff

vs.                                                              Civil Action No. 1:05cv317

UNITED FURNITURE INDUSTRIES, INC                                            Defendant

ORDER

This cause comes before the court on the motion of defendant United Furniture Industries, Inc. ("United") for summary judgment, pursuant to Fed. R. Civ. P. 56. Plaintiff Titus B. Johnson has responded in opposition to the motion, and the court, having considered the memoranda and submissions of the parties, concludes that the motion should be granted in part and denied in part.

This is an employment discrimination action arising out of plaintiff's former employment as a supervisor for United's recliner facility located in Amory. Plaintiff was hired by United in March, 2000, and he was promoted to the position of cutting room supervisor in August, 2001. Plaintiff suffers from sickle cell anemia, and flare-ups of the disease forced him to miss work two or three times a year. Defendant does not appear to dispute that, his medical condition notwithstanding, plaintiff was a hard-working and competent employee until his disease forced him to take disability and resign on January 17, 2005. Plaintiff alleges that he - an African-American- suffered from racial discrimination during his tenure at United, which manifested itself both in harassment from management and in his being paid less than the other supervisors

at the plant, who were white. Specifically, plaintiff complains that he was subjected to racially offensive language at the hands of assistant plant manager Jack Smith, and he contends that the racial bias against him also manifested itself in his being given less pay than other supervisors. Plaintiff filed the instant action on December 5, 2005, and defendant has presently moved for summary judgment.

The court will first address plaintiff's allegations that he suffered from discrimination in the amount of compensation which he received. In the court's view, plaintiff has succeeded in creating fact issues as to his unequal pay claims under 42 U.S.C. § 1981. The court would initially note that plaintiff also raises these unequal pay claims in the context of Title VII, and defendant has responded with arguments that plaintiff did not properly follow some of the procedural pre-requisites for maintaining a Title VII action and/or that some of the Title VII claims are time-barred. However, plaintiff's complaint clearly alleges violations of § 1981, which prohibits race discrimination in the "mak[ing] and enforc[ing]" of contracts. The Civil Rights Act of 1991 modified § 1981 in such a way as to permit plaintiffs alleging discrimination on the basis of race to largely duplicate the recovery which would be available to them under Title VII, without first being required to surmount some of the procedural hurdles presented by Title VII, such as the necessity of exhausting administrative remedies before the EEOC. Given that plaintiff can essentially duplicate his Title VII remedies through his § 1981 action, the court sees no benefit to addressing the procedural obstacles facing his Title VII claims, and the court will assume that plaintiff's race discrimination claims will be asserted solely under § 1981.[1]

---

[1] Plaintiff should so inform the court if the court's understanding in this regard is in error. The court will not permit plaintiff to seek double recovery, however, and it is unclear to this court why plaintiff would choose to proceed under Title VII, rather than § 1981.

Section 1981 does not contain a statute of limitations, and courts therefore use the most analogous statute of limitations of the forum state. *Goodman v. Lukens Steel Co.*, 482 U.S. 656, 660, 107 S.Ct. 2617, 96 L.Ed.2d 572 (1987). In the court's view, the most analogous Mississippi statute of limitations is the general three year statute of limitations set forth in Miss. Code Ann. §15-1-49. Plaintiff filed the instant action on December 5, 2005, and he testified in his deposition that he does not feel that he had been discriminated against prior to January 2003. See deposition at 49. It is thus apparent that plaintiff's § 1981 unequal pay claims are not time-barred.

Unequal pay claims may be asserted under § 1981, *see Mills v. City of Port Arthur, Texas*, 2006 WL 3531460 (E.D. Tex. 2006), and the Fifth Circuit has noted that claims of discrimination brought under § 1981 are governed by the "same evidentiary framework applicable to claims of employment discrimination brought under Title VII." *LaPierre v. Benson Nissan, Inc.*, 86 F.3d 444, 448 n. 2 (5th Cir. 1996). For summary judgment purposes, this means that this court applies the *McDonnell Douglas* burden-shifting analysis, as recently modified by the Fifth Circuit. The *McDonnell Douglas* framework requires the plaintiff to first establish a *prima facie* case of discrimination in order to survive summary judgment. Establishing a *prima facie* case requires a showing that: (1) the plaintiff is a member of a protected group; (2) he was qualified for the position at issue; (3) he was discharged or suffered some adverse employment action by the employer; and (4) he was replaced by someone outside his protected group or he was treated less favorably than other similarly situated employees outside the protected group. *Wheeler v. BL Dev. Corp.*, 415 F.3d 399, 405 (5th Cir. 2005). In unequal pay cases, a plaintiff's prima facie case requires a showing that he is a member of a protected class and is paid less than

3

a nonmember for work requiring substantially the same responsibilities. *See Uviedo v. Steves Sash & Door Co.*, 738 F.2d 1425, 1431 (5th Cir. 1984).

In the court's view, plaintiff has succeeded in establishing a *prima facie* case as to his unequal pay claims. In so concluding, the court would note that defendant does not dispute that plaintiff was qualified for his position nor does it dispute that he was paid less than the white supervisors at its Amory facility. Defendant instead argues that plaintiff's duties as a cutting room floor supervisor entailed less work since the cutting department "had fewer employees than other departments at the United facility, performed a less complicated job than the other departments and typically worked fewer hours than other departments at the facility." While this evidence could, in fact, lead a jury to conclude that plaintiff's position did not involve the same responsibilities as those of the other supervisors, there is also evidence which could support a different conclusion.

Plaintiff was adamant in his deposition that he actually worked harder than certain other supervisors, since he did not merely supervise the cutting operations but also performed the cutting himself. Plaintiff testified that this fact distinguished his position from that of other supervisors, such as the sewing room supervisor, who merely supervised other employees and did not perform his or her own work. Plaintiff also contends that he was actually more experienced at his job than certain other supervisors. Defendant rebuts this arguments by noting that the other supervisors had more employees to supervise and by arguing that the jobs of the other supervisors were more complex. While both parties have valid arguments on this issue, the Fifth Circuit has stated that establishing a *prima facie* case of discrimination requires a rather minimal showing of proof, *see Thornbrough v. Columbus & Greenville R.R. Co.*, 760 F.2d 633,

4

639 (5th Cir.1985), and the court concludes that the plaintiff has submitted sufficient evidence to meet his burden in this regard.

Assuming that a plaintiff is successful in establishing a *prima facie* case of discrimination, the employer must then rebut the presumption of discrimination which arises by articulating a legitimate, nondiscriminatory reason for the adverse employment action. *Auguster v. Vermilion Parish Sch. Bd.*, 249 F.3d 400, 402 (5th Cir. 2001). It is at this stage that the *McDonnell Douglas* standard has recently been modified, in a manner which makes surviving summary judgment less difficult for many plaintiffs. Until recently, the law in the Fifth Circuit and elsewhere was that, once the employer articulated a non-discriminatory reason for an adverse employment action, the employee's sole recourse was to present substantial evidence that the employer's stated reason was a pretext for discrimination. Demonstrating pretext usually involved showing that the employer's stated non-discriminatory reason was false, and many discrimination cases have been dismissed at the summary judgment stage in the Fifth Circuit for plaintiffs' inability to make such a showing of pretext.

In the 2004 decision of *Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004), however, the Fifth Circuit interpreted the U.S. Supreme Court's 2003 decision in *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 123 S.Ct. 2148, 156 L.Ed.2d 84 (2003) as significantly expanding a plaintiff's options for rebutting the defendant's stated non-discriminatory reason. That is, the Fifth Circuit interpreted *Desert Palace* as requiring a modification of the *McDonnell Douglas* framework to permit the employee to survive summary judgment by offering sufficient evidence to create a genuine issue of fact *either*

    (1) that the defendant's reason is not true, but is instead a pretext for

> discrimination (pretext alternative); *or*
> (2) that the defendant's reason, while true, is only one of the reasons for its conduct, and another 'motivating factor' is the plaintiff's protected characteristic (mixed-motive[s] alternative).

*Rachid*, 376 F.3d at 312. Clearly, it is the second option which marks such a significant departure from pre-existing law. While plaintiffs in the Fifth Circuit have traditionally focused on trying to prove that a defendant's stated non-discriminatory reason was false, *Rachid* provides them with the option of not contesting the truthfulness of the stated reason, and instead attempting to demonstrate that discrimination was also a motivating factor behind the adverse employment action.

Defendant has offered a non-discriminatory reason for the disparity in pay between plaintiff and his fellow supervisors, namely the aforementioned difference in the complexity and scope of responsibility of the jobs. However, the court concludes that plaintiff has managed to rebut this evidence by submitting evidence which, in the court's view, raises fact issues as to whether race discrimination was at least a factor in plaintiff's being paid less than white supervisors. In addition to his previously-discussed arguments regarding the difficulty of his job, plaintiff has also submitted evidence of racial bias against him by at least one of defendant's plant managers.

Plaintiff's deposition testimony and that of his former co-worker Bonnie Terry was that his former supervisor, assistant plant manager Jack Smith, used highly offensive terminology to refer to plaintiff. Plaintiff testified in his deposition that while Jack Smith called the other supervisors by their names, he would repeatedly call him "boy":

> Q: Give me an example of how he would address you as "boy."
> A: Boy, you need to do more work. Boy, you need to tell your employees to do

> this and that.
> Q: Okay, you never heard him say that to anyone else?
> A: No, sir.
> Q: Any other employee?
> A: No sir.
> Q: Did he ever call you by your name?
> A: Every once in a while.
> Q: Did you think that had some negative meaning to it?
> A: Yes, sir.
> Q: How did you take it?
> A: I took it as a racial remark.

Plaintiff's testimony was buttressed by that of former United sewing machine operator Bonnie Terry, who testified that she and her co-workers repeatedly heard Jack Smith call plaintiff a "nigger" behind his back. Specifically, Terry testified as follows:

> Q: How many times did you hear Jack Smith call Titus Johnson a nigger?
> A: Once.
> Q: Okay.
> A: To his face, once.
> Q: Okay. Were there other occasions you heard him sort of mutter it under his breath?
> A: Yes. Several.
> Q: How many times did you hear him do that.
> A: Several. Just different times. ...
> Q: How is it that you remember so clearly him calling Titus Johnson a nigger?
> A: Because we would sit around and talk like, oh my God, I can't believe he did that, you know. Him being who he was, he should have no business calling him like that.

Defendant disputes the accuracy of this testimony, but, at the summary judgment stage, this court is required to resolve disputed fact issues in favor of plaintiff, as the non-moving party.

It would be very difficult for this court to conclude, at the summary judgment stage, that a supervisor who was regularly called "boy" by his assistant plant manager, and who was on several occasions called a "nigger" by that same manager behind his back, had not managed to create fact issues as to whether discrimination was at least a motivating factor behind his being

7

paid less than white supervisors. This court's conclusion in this regard is strengthened by the fact that defendant's Human Resources manager Sheryl Aldridge testified that Jack Smith had "input" into whether plaintiff received a raise and that the final decision whether to turn in a request for a raise to the plant manager was made by Andy Smith, who was the brother of Jack Smith. Defendant suggests that there is no evidence that Andy Smith had any racial bias, but this is not necessarily the case. Indeed, Bonnie Terry testified regarding a separate incident in which a different African-American employee had struck Jack Smith after Smith had called him a "nigger" to his face. Terry testified that she witnessed Andy asking his brother why the employee had punched him and that Jack Smith admitted that he had called him a "nigger." According to Terry's testimony, the end result of this confrontation was that the employee who struck Smith was fired, while Jack Smith was later promoted.

Andy Smith denied in his deposition that his brother had ever called an employee a "nigger" and this clearly raises a conflict between his testimony and that of Bonnie Terry. Clearly, resolving this conflict involves credibility assessments which are best made by a jury. In the court's view, concerns regarding whether Andy Smith might have been influenced by any biases held by Jack Smith are strengthened by the fact that these men are such close blood relatives. While a jury might ultimately find defendant's evidence regarding the relative difficulty of the supervisor positions to be persuasive, the court concludes that it is for a jury, rather than this court, to make such factual assessments.

In the court's view, the frequency of the alleged remarks, along with the fact that Jack Smith and his close relative (whose own credibility and objectivity are in question) each had "input" into whether plaintiff was given a raise, serve to distinguish this case from the Fifth

8

Circuit's "stray remarks" jurisprudence which often makes demonstrating discrimination on the basis of such remarks difficult. *See, e.g. Scales v. Slater*, 181 F.3d 703, 712 (5th Cir.1999). This is assuming that this "stray remarks" jurisprudence even has continued effect following the lowering of the summary judgment evidentiary threshold by the Fifth Circuit in *Rachid*. In the court's view, given that the Fifth Circuit now permits a plaintiff to survive summary judgment where he can show that discrimination was one "motivating factor" among others, it would be illogical to prohibit a plaintiff from demonstrating that a supervisor who had input regarding a given employment decision regularly addressed him in a racially derogatory manner. Defendant's motion for summary judgment will therefore be denied, as it relates to plaintiff's unequal pay claims.

While the court thus concludes that plaintiff has managed to create triable jury issues with regard to his unequal pay claims, such is not the case with regard to his racial harassment claims. In the 1998 companion cases of *Burlington Industries v. Ellerth*, 524 U.S. 742, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998) and *Faragher v. City of Boca Raton*, 524 U.S. 775, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998), the U.S. Supreme Court established a framework for analyzing Title VII allegations of harassment by supervisors. Although *Faragher* and *Ellerth* dealt with claims of sexual harassment, the Fifth Circuit has held that their reasoning is equally applicable to claims of racial harassment. *See Deffenbaugh-Williams v. Wal-Mart Stores, Inc.*, 156 F.3d 581, 593 (5th Cir.1998) (stating that "it appears that the Court [in *Ellerth* and *Faragher*] intended to apply these same agency principles to all vicarious liability inquiries under Title VII for acts of supervisors, including racial discrimination.")

Under the *Faragher/Ellerth* approach, when a supervisor exercising his authority to make

9

critical employment decisions on behalf of his employer takes a sufficiently concrete action with respect to an employee (a so-called "tangible employment action"), the employer may be held vicariously liable, without any showing that it failed to exercise due care to prevent and/or correct the harassment. *Ellerth*, 524 U.S. 742. In this case, plaintiff has failed to establish fact issues as to whether he suffered a "tangible employment action" resulting from Jack Smith's alleged harassment in this case, other than the compensation issues which are already addressed under his unequal pay claim. While plaintiff did resign his position at United, he made it clear in his deposition that he did so on the basis of his health, and the fact that he applied for and received disability benefits makes it clear that such is the case. In his brief, plaintiff suggests that Smith's harassment led to some of the health problems which forced his resignation, but, in the court's view, plaintiff has failed to produce sufficient evidence to create fact issues in this regard. Indeed, the fact that Smith apparently still receives disability benefits for his sickle cell anemia calls into serious question his assertion that it was stress from his harassment at work which led to a worsening of his symptoms.

Under the *Faragher/Ellerth* approach, if a plaintiff has failed to prove a "tangible employment action," he may still recover for severe or pervasive harassment that results in a hostile work environment. Unlike in "tangible employment action" cases, however, the employer has the opportunity to avoid liability for such claims by establishing the elements of the "reasonable care" affirmative defense. *Faragher*, 524 U.S. at 807-08, 118 S.Ct. 2275; *Ellerth*, 524 U.S. at 765, 118 S.Ct. 2257. To prevail on the affirmative defense of "reasonable care," an employer must prove (a) that it exercised reasonable care to prevent and correct promptly any harassing behavior, and (b) that the plaintiff employee "unreasonably failed to take advantage of

any preventive or corrective opportunities provided by [it] or to avoid harm otherwise." *Id.*

This part of the *Faragher/Ellerth* analysis is fatal to plaintiff's harassment claim, since plaintiff admitted that he never informed Ms. Aldridge, the human resources director, of Smith's alleged harassment since he "didn't want to go over [his] head." Plaintiff asserts in his brief that he did, in fact, report harassment to Aldridge, but the only such report to which he testified in his deposition related to his illness and his being criticized for calling in sick. Indeed, plaintiff conceded in his deposition that he "never contacted [Aldridge] and made any complaint about discrimination." [Depo. at 66]. While plaintiff's desire not to turn in his supervisor is perhaps understandable, the fact remains that it was his duty under *Faragher/Ellerth* to do so, and he may not seek to hold United liable for harassment which he did not report to it.

The court's conclusion that plaintiff's harassment claim lacks merit is strengthened by the fact that plaintiff testified in his deposition that his primary grievance in this lawsuit relates to his allegedly unequal pay, rather than to his alleged harassment at the hands of Smith. Indeed, plaintiff agreed with defense counsel's suggestion that his "real complaint in this lawsuit [is] the fact that you feel you were making less money than you should have been paid." The court therefore concludes that plaintiff may not maintain a harassment claim based upon the actions of Jack Smith. Moreover, any constructive discharge claims asserted by plaintiff are negated not only by the effect of *Faragher/Ellerth*, but also by the previously mentioned fact that plaintiff has sought and continues to receive Social Security disability benefits due to his sickle cell anemia.

In light of the foregoing, the court concludes that plaintiff has established triable fact issues regarding whether he was paid less than white supervisors due, at least in part, to his race. Defendant's motion for summary judgment will therefore be denied as to plaintiff's unequal pay

claims under § 1981. However, defendant's motion will be granted as to plaintiff's harassment and constructive discharge claims, for the reasons previously discussed.

It is therefore ordered that defendant's motion for summary judgment [46-1] is granted in part and denied in part, as more specifically set forth in this order.

SO ORDERED, this the 21st day of May, 2007.

                                     **/s/ Michael P. Mills**
                                     **UNITED STATES DISTRICT JUDGE**